

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3612 | **DATE** | 9/24/2001 |
| **CASE TITLE** | Yuba Nursing Home, Inc. vs. TLC of the Bay Area, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

TLC of the Bay Area, Inc.'s Motion to Dismiss for lack of personal jurisdiction and improper venue or in the alternative a Motion to Transfer Venue.

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, TLC's Motion to Dismiss [2-1] for lack of personal jurisdiction and improper venue is denied and the Motion to Transfer Venue to the Southern District of California is granted.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | |
|---|---|---|
| X | No notices required, advised in open court. | on 9-25-01 |
| | No notices required. | |
| | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |
| klb (lc) | courtroom deputy's initials | |

number of notices

SEP 2 6 2001
date docketed

15
docketing deputy initials

date mailed notice

Document Number

7

FILED FOR DOCK...
01 SEP 25 PM 8: 09

Date/time received in central Clerk's Office

mailing deputy initials

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED

SEP 2 6 2001

| | | |
|---|---|---|
| YUBA NURSING HOME, INC,<br>an Illinois corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No.  01 C 3612 |
| v. | ) | |
| | ) | HONORABLE DAVID H. COAR |
| TLC OF THE BAY AREA, INC.,<br>a Delaware corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before this Court is Defendant TLC of the Bay Area, Inc.'s (TLC)  Motion to Dismiss for

lack of personal jurisdiction and improper venue, pursuant to Fed. R. Civ. P. ("Rule")  12(b)(2)

and Rule 12(b)(3), or in the alternative, a Motion for Transfer of Venue pursuant to 28 U.S.C.

§1404(a).  For the reasons set forth below, this court denies TLC's Motion to Dismiss and grants

its Motion for Transfer.

### I. Factual Background

Yuba Nursing Homes, Inc. ("Yuba") makes the following allegations in its complaint.

Yuba is an Illinois corporation with its principal place of business in Chicago, Illinois.  It  is in

the business of leasing real estate and then sub-leasing such real estate to entities who operate

nursing homes on the properties; it owns a leasehold interest in property located at 2300 Brown

Street, Napa, California (the "Property"), which it leased from Alexander M. Maisin and June L.

Maisin.  TLC is a Delaware corporation with its principal place of business in Santa Clara,

-1-

California. TLC sub-leased Yuba's interest in the Property for the purposes of managing and operating a nursing home for a term of seven years and one month, commencing on October 1, 1994 and ending on October 30, 2001. Under the terms of the sub-lease, TLC was required to use and occupy the Property as a Medi-Cal and Medicare certified nursing facility having no less than 84 licensed beds. TLC was prohibited from abandoning the Property. The sub-lease also prohibited TLC from assigning, subletting, selling, pledging, encumbering or transferring its interest in the sub-lease without the prior written consent of Yuba. The sub-lease required TLC to pay Yuba $21,646.00 per month from October 1, 2000 through September 30, 2001. From October 1, 2001 to October 30, 2001, TLC was to pay Yuba $22,116.00 per month. Additionally, TLC was to pay all costs, expenses and obligations relating to the Property that arose or became due during the term of the sub-lease. TLC was also required to make deposits for annual real estate and personal property taxes on a monthly basis.

Yuba alleges a breach of contract and tortious interference with prospective business relations and claims damages in excess of $2,000,000.     TLC filed a Motion to Dismiss for lack of personal jurisdiction and improper venue or in the alternative a Motion to Transfer venue to the Southern District of California.

## II. Standard

In a diversity jurisdiction case, a federal district court only has personal jurisdiction over a particular defendant " 'if a court of the state in which it sits would have such jurisdiction.' " RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1275 (7th Cir.1997). Thus, this court will only have personal jurisdiction in a diversity jurisdiction case if an Illinois state court could exercise personal jurisdiction over the defendant. Once a defendant has challenged a court's personal

-2-

jurisdiction, the plaintiff has the burden of showing personal jurisdiction. Id. at 1276. In determining whether the plaintiff has met his or her burden of proving personal jurisdiction, the court may receive and consider affidavits from both parties. Glass v. Kemper Corp., 930 F.Supp. 332, 337 (N.D.Ill.1996). The court resolves factual disputes in the pleadings and affidavit in favor of the plaintiff but takes as true facts contained in the defendant's affidavit that the plaintiff does not dispute. Id.

### III. Discussion

A. Personal Jurisdiction

Defendant argues that this Court does not have personal jurisdiction because TLC is a California corporation, is not qualified to do business in Illinois, has no employees in Illinois, does not have an Illinois telephone number, and does not maintain books or records in Illinois. This Court finds the exercise of personal jurisdiction over the Defendant proper. In considering a challenge to personal jurisdiction, the court must look to state statutory law, state due process law, and federal due process law. RAR, 107 F.3d at 1276. Under the Illinois long-arm provision, a court may exercise jurisdiction over nonresident defendants, "as to any cause of action arising from the doing of any such acts [as]:

(1)The transaction of any business within this State;
(2)The commission of a tortious act within this State;
* * *
(7)The making or performance of any contract or promise substantially connected
with this State;"
735 ILCS 5/2-209(a).

The Illinois long-arm statute further states, "A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United

States." 735 ILCS 5/2- 209(c). Finally, where jurisdiction is predicated on subsection (a), only causes of action arising from the enumerated acts may be asserted against a nonresident defendant. 735 ILCS 5/2-209(f).

1. Contract Claim

Each of Yuba's causes of action must stand on its own for purposes of personal jurisdiction, and this Court finds jurisdiction over each one proper. Heritage House Restaurants, Inc. v. Continental Funding Group, Inc., 906 F.2d 276, 279 (7th Cir.1990) (citing Club Assistance Program, Inc. v. Zukerman, 594 F.Supp. 341, 345 (N.D. Ill. 1984)). Yuba's first claim is that TLC breached the contract between the parties. This Court finds the facts of the case meet Illinois long-arm jurisdiction requirements under (a)(7) ("making or performance of any contract"). In Kalata v. Healy, 312 Ill.App.3d 761, 766 728 N.E.2d 648, 652-653 (1st Dist.2000), the court found the existence of a contract and an exchange of funds between the parties, formed as a result of negotiations over the phone between a party residing in California and a party residing in Illinois, was sufficient to create a prima facie case that there existed a contract substantially connected to Illinois, thereby establishing personal jurisdiction under (a)(7). Neither party, in the present case, disputes the existence of an agreement nor the transfer of funds between the parties. TLC initiated contact with Yuba by phoning Yuba in Illinois. A series of phone calls and correspondence between Yuba in Chicago and representatives of TLC followed as the sub-lease agreement was negotiated. Thad Kemp, one of TLC's incorporators, came to Chicago, Illinois to negotiate and finalize the terms of the agreement. Further, payment in the form of monthly rent checks was to be sent to Illinois. The breach of contract claim concerns, in part, the failure of TLC to make its requisite monthly rent payments to Yuba in

Chicago, Illinois. Since the requirements for asserting jurisdiction in Illinois satisfied under

(a)(7) of the long-arm statute, this Court is able to assert personal jurisdiction over Defendants

for Yuba's breach of contract claims according to Illinois law.

    2. <u>Tort Claim</u>

    The second claim is a tort claim based on the premature shutdown of the nursing facility

and the subsequent loss of business that resulted. Since the claim is based on tort, it relies on

(a)(2) ("tortious injury") for jurisdiction. This Court finds that the assertion of jurisdiction over

the Defendant is warranted for the tort claim as well. The court in <u>Arthur Young & Co. v.</u>

<u>Bremer</u>, 197 Ill.App.3d 30, 36, 554 N.E.2d 671, 676 (1st Dist.1990) stated:

> In order to sustain jurisdiction based on the commission of a tortious act in
> Illinois, the plaintiff must allege that the defendant performed an act or omission
> which caused an injury in Illinois, and that the act or omission was tortious in
> nature. Alternatively, the requirements of the tortious act provision of the
> long-arm statute may be met if plaintiff demonstrates an economic injury in
> Illinois coupled with activity indicating an intent to affect Illinois interests.

Jurisdiction by Illinois long-arm statute is proper when the injury occurs in Illinois, even if all

other conduct takes place elsewhere. <u>Celozzi v. Boot</u>, No. 00 C 3285, 2000 WL 1141568 at *3

(N.D. Ill. Aug. 11, 2000); <u>Stein v. Rio Parismina Lodge</u>, 296 Ill.App.3d 520, 526, 695 N.E.2d

518, 523 (1st Dist.1998); <u>Habitat Wallpaper and Blinds, Inc. v. K.T. Scott Ltd. Partnership</u>, 807

F.Supp. 470, 473 (N.D.Ill.1992). Where the injury is economic, the plaintiff must additionally

demonstrate an intent to affect an Illinois interest. <u>Celozzi v. Boot</u>, 2000 WL 1141568 at *3 ;

<u>Real Colors, Inc. v. Patel</u>, 974 F.Supp. 645, 649-650 (N.D.Ill.1997). In this case, Yuba, an

Illinois corporation, sufficiently alleges an economic loss attributable to TLC's premature

shutdown of the nursing facility located on the Property. TLC at all times knew that Yuba is an

Illinois corporation. It also knew of the negotiations between the Maisins and Yuba to extend the underlying lease. TLC closed the facility intending to effect Yuba, an Illinois corporation.. For the reasons stated above, this Court finds the assertion of Illinois jurisdiction over Defendants via the state long-arm statute proper.

    3. <u>Federal Due Process</u>

    In addition to the Illinois long-arm statute, the requirements of federal due process must be satisfied. In order to exercise personal jurisdiction over a non-resident defendant the defendant must have sufficient minimum contacts with the forum state such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. <u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In determining whether sufficient minimum contacts exist, courts consider whether a defendant could "reasonably anticipate being haled into court" in Illinois. <u>World-Wide Volkswagen Corp. v. Woodsen</u>, 444 U.S. 286, 297, 100 S.Ct. 554, 62 L.Ed.2d 490 (1980). This requirement is satisfied when the defendant intentionally directs his activities at forum state residents and the litigation arises from injuries allegedly caused by those activities. <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The initiation of contact alone establishes that TLC intentionally directed its activities at Illinois. <u>McGee v. International Life Insurance Co.</u>, 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) (holding California resident could sue Texas resident in California after Texas resident solicited California resident's business by mail). As previously stated, TLC initiated contact with Yuba by telephone, met with Yuba in Illinois, and sent payment to Illinois. TLC had knowledge during that time that Yuba was an Illinois corporation. Phone calls and payments to Illinois further evidence of contract

performance in the forum state. <u>JDY Enterprises v. Martin</u>, No. 01 C 2266, 2001 WL 664551 at * 2-3 (N.D. Ill. June 12, 2001). There is a sufficient basis for concluding that TLC could reasonably expect to be haled into court in Illinois. Accordingly, this court has personal jurisdiction over TLC.

B. Improper Venue and Transfer

As an additional ground for dismissal, TLC contends that venue in this court is improper. However, where federal jurisdiction is based on diversity of citizenship, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred..." 28 U.S.C. § 1391(a)(2). For the reasons discussed above, Yuba's allegations suggest a substantial part of the events giving rise to the alleged contract breach and tortious interference with business relations occurred in Illinois.

Alternatively, TLC moves to transfer this suit to the Southern District of California. A motion to transfer venue is governed by 28 U.S.C. §1404(a), which provides: "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." A transfer should only be granted when three conditions are met: (1) venue is proper in the transferor district; (2) venue and jurisdiction are proper in the transferee district; and (3) the transfer will serve the convenience of the parties and the witnesses and will promote the interest of justice. <u>JDY Enterprises, Inc. v. Martin</u>, 2000 WL 664551 at *3; <u>FUL Inc. v. Unified Sch. Dist. No. 204</u>, 839 F. Supp. 1307 (N.D. Ill. 1993). A district court judge has a great amount of discretion in "weighing of factors for and against transfer. <u>Coffey v. Van Dorn Iron Works</u>, 796 F.2d 217, 219 (7th Cir. 1986).

As previously stated, venue is proper in the Northern District of Illinois. Similarly, venue is proper in the Southern District of California since the Defendant, TLC, is located there. 28 U.S.C. § 1391(a)(1) (stating "A civil action... may ... be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State"). For the third prong, the court considers (1) the plaintiff's choice of forum; (2) the site of material events; (3) the availability of evidence in each forum; (4) the convenience to the parties of litigating in the respective forums. Barnes v. Rollins Dedicated Carriage Services, Inc., 976 F.Supp. 767-68 (N.D. Ill. 1997). Ordinarily, plaintiff's choice of forum is entitled to substantial weight under Section 1404(a), especially if it is the plaintiff's home forum and substantial events giving rise to the claim occurred in the forum. United Airlines, Inc. v. Mesa Airlines, Inc., 8 F.Supp.2d 796, 798 (N.D.Ill.1998). Although this factor weighs in favor of Yuba, it weighs weakly. The plaintiff's choice of forum is given less weight where another forum bears a stronger relationship to the dispute. Pepsico, Inc. v. Marion Pepsi-Cola Bottling Co., No. 99 C 3939, 2000 WL 263973, at *8 (N.D. Ill. Feb. 29, 2000) (finding that although substantial events arose in the Northern District of Illinois, the franchise's production facilities, with which the dispute arose, was situated in the Southern District); Countryman v. Stein, Roe & Farnham, 681 F.Supp. 479, 483 (N.D. Ill.1987) (ruling that the plaintiff's choice of forum is given less weight if the cause of action "did not conclusively arise in the chosen forum"). While it is true that TLC sent payments to Illinois, the property which is the subject of the lawsuit is in California. In addition the shutdown of the facility giving rise to the breach of contract and tortious interference claim also occurred in California. Accordingly, Yuba's choice of forum is not given considerable weight.

The site of material events favors California. While material events giving rise to this action occurred in both forums, the assertions proffered by both parties clearly demonstrate that California has a more substantial relationship to the dispute. In addition to the nursing facility being located in California, Yuba engaged counsel in California for the purpose of negotiating, drafting and entering into the Sublease. Yuba's California counsel was listed as counsel to whom all notices, demands and requests were required to be given under the sub-lease. In addition, California law governs the sub-lease agreement. The convenience of the parties similarly favors California. While it would be convenient for Yuba to continue to litigate this case in Illinois, there is no reason to believe it would be inconvenient for them to do so from California since they already have counsel there. Defendant would find the Southern District of California a more convenient forum for litigation because that is where it is located. Further, documents and records are easily transportable. As for witnesses, approximately ten relevant witnesses reside in California while only four reside in Illinois. Thus the convenience of the parties weighs in favor of the Defendants.

The final consideration under § 1404(a) is whether transferring venue would serve the interests of justice. Among the factors this Court must consider when addressing this question are the speed at which the case will proceed to trial and the public interest in having a case resolved in a particular forum. Celozzi v. Boot, 2000 WL 1141568, at * 8; Cody v. DeKalb Sanitary Dist., No. 98 C 6832, 1999 WL 417368, at *3 (N.D.Ill. Jun. 13, 1999); Carillo v. Darden, 992 F.Supp. 1024, 1026 (N.D.Ill.1998). These factors focus on the efficient administration of the court system rather than the private considerations of the litigants. Vandeveld v. Christoph, 877 F.Supp. 1160, 1169 (N.D.Ill.1995). This factor is indeterminate. The relevant court management statistics are

the median number of months from filing to disposition of civil cases and the median number of months from filing to trial. Id. According to the Federal Court Management Statistics for 2000, median time between filing and disposition in civil cases was approximately five months in the Northern District of Illinois and seven and a half months in the Southern District of California. Further, the average time between filing and trial in civil cases was twenty-six months in the Southern District of California and twenty-seven months in the Northern District of Illinois.

As for the "public interest," the court must evaluate the citizenship of the parties injured by the alleged misconduct, see Countryman v. Stein, Roe & Farnham, 681 F.Supp. 479, 485 (N.D.Ill.1987), but the administration of justice is better served when "the action is litigated in the forum that is 'closer to the action.'" Carillo v. Darden, 992 F.Supp. 1024, 1026 (N.D.Ill.1998) (quoting Paul v. Lands End, Inc., 742 F.Supp. 512, 514 (N.D.Ill.1990)). Illinois has an interest in that its residents suffered the injury by the alleged breach of contract and misconduct. On the other hand, the contract is governed by California law and involves real property located in California. California has a stronger interest than Illinois. The moving party has clearly shown that California is a more convenient venue in which to continue this litigation. This Court concludes, in its discretion, that transfer under § 1404(a) to the Southern District of California is warranted.

### Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss for lack of personal jurisdiction and improper venue is denied and the Motion to Transfer Venue to the Southern District of California is granted.

Enter:

David H. Coar

United States District Judge

Dated:   SEP 2 4 2001